# JONES *v.* COOKE.

---

PATENTS; INTERFERENCE; DILIGENCE; DOCUMENTARY EVIDENCE.

1. Where the senior party to an interference stands upon his filing date for conception and reduction to practice, the burden is on the junior party to show conception before the date of the senior party's application, and either reduction to practice or that he was exercising due diligence at and immediately before that date.

2. Where the filing date of the senior party to an interference, who stood thereon for conception and reduction to practice, was May 15, 1902, and it was shown that the junior party opened correspondence with a patent solicitor in March of the same year with a view to applying for a patent for the invention, sending the company on the 24th day of that month a fee for making a preliminary examination, and on the 2d of the following month a fee for making the necessary drawings, and that he swore to·an application May 12, 1902, and returned it to the solicitors who filed it June 11, 1902, it was *held,* affirming a decision of the Commissioner of Patents, that the junior party had shown sufficient diligence and was entitled to an award of priority of invention.

3. Where letters are not offered in evidence to prove a contract or claim which constitutes the subject-matter of the litigation, but are offered merely as collateral evidence relating to the conduct of the parties, the fact that they were received in due course of mail and acted upon by the writer and addressee is sufficient proof of genuineness.

No. 293.    Patent Appeals.    Submitted March 9, 1905.    Decided May 23, 1905.

HEARING on an appeal from a decision of the Commissioner of Patents in an interference case.                *Affirmed.*

The facts are sufficiently stated in the opinion.

*Mr. Horace Pettit* for the appellant.

*Mr. William W. Dodge* and *Mr. Jacob Felbel* for the appellee.

Mr. Chief Justice SHEPARD delivered the opinion of the Court:

This is an appeal from the decision of the Commissioner of Patents in an interference case to which there were originally four parties claiming the same invention. Two of these, Daniel Briggs and George H. Lillie, having failed to appeal, the controversy here is between the claims of the appellants, Roger B. Jones and Abraham Merritt Taylor, and the appellee, William L. Cooke.

The invention in controversy relates to the ribbon mechanism of typewriters using ribbons divided into longitudinal sections upon which are inks differing in color, or in some other respects dependent upon the character of writing desired.

The issue as declared contained six counts as follows:

"1. In a typewriting machine, the combination of means for automatically reciprocating the ribbon transversely and means for shifting the ribbon so that the contact of the type is confined to a portion only of the width of said ribbon as the same is reciprocated by the automatic means.

"2. In a typewriting machine, the combination of means for feeding the ribbon longitudinally, means for automatically reciprocating the ribbon transversely, and means for shifting the ribbon so that the contact of the type is confined to a portion only of the width of said ribbon as the same is reciprocated by the automatic means.

"3. In a typewriting machine, the combination of means for feeding the ribbon longitudinally, means for automatically reciprocating the ribbon transversely, and means for changing the position of the connections between the ribbon and the automatic reciprocating means, to confine the contact of the type to different portions of the width of said ribbon as the same is reciprocated.

"4. In a typewriting machine, the combination of a multiplex ribbon, holders for said ribbons, means for rotating said

holders, automatic means for reciprocating said holders, and means interposed between said holders and the automatic means, for changing the relation between said automatic means and said holders to confine the contact of the type to different portions of the width of said ribbon as the same is reciprocated.

"5. In a typewriting machine, the combination of means for automatically feeding a ribbon in two directions at substantially right angles to each other, and hand actuated means for changing the relative disposition of the parts of said feeding means, so that limits of movement in one direction will be altered and different limited portions of the ribbon may be employed.

"6. In a typewriting machine, the combination of a ribbon that is divided into fields or sections, a carrier therefor, automatically operated means for moving said carrier so as to move different portions of the field or section of ribbon which is in the operative position past the printing center, and hand operated means for changing the relation of the parts of said automatically operated parts so that any one of the various sections may be moved to the operative positions."

The Examiner of Interferences awarded priority to Jones and Taylor. This decision was reversed by the Examiners-in-Chief, who awarded priority to Cooke. On appeal to the Commissioner, the interference was dissolved as to counts one and two, and as to the remaining counts the decision of the Examiners-in-Chief, awarding priority to Cooke, was affirmed. No appeal has been taken from so much of the decision as relates to counts 1 and 2.

The appellants are the senior parties, having filed their application on May 15, 1902. They took no testimony in support of their claims, but stood upon their record date for conception and reduction to practice. Cooke's application was filed June 11, 1902. His preliminary statement alleges conception of the invention in the winter of 1897 and 1898; making of drawings and sketches in January and February, 1898; construction of a model in March, 1898, which produced the desired result, but was not altogether satisfactory as to details; continuation of experiments to and including March, 1902;

construction of a full size working mechanism applied to a typewriter which worked satisfactorily and reduced the invention to practice in March, 1902.

The burden was imposed upon Cooke to show conception of the invention before the date of the senior party's application, and either reduction to practice, or that he was exercising due diligence at and immediately before that date.

It is unnecessary to determine the exact date of Cooke's conception, and it is sufficient to say that his evidence establishes a complete conception of the invention on or before March 1, 1902.

The Examiners-in-Chief found it unnecessary to determine the question of Cooke's diligence, and rested their decision on the sufficiency of his evidence to show actual reduction to practice in March, 1902. The Commissioner did not pass upon this question, but founded his decision in favor of Cooke upon the sufficiency of the evidence to show that he was exercising diligence when his adversaries entered the field.

Agreeing with the conclusion of the Commissioner, there is no occasion to pass upon the claim of reduction to practice, concerning which there is, in our minds, some doubt.

We have no doubt, however, that Cooke was exercising the necessary diligence in perfecting his invention and preparing to apply for a patent, when the appellants entered the office. The appliance for shifting the ribbon with the desired ease and speed was a delicate one and required considerable skill in its perfection. Whether or not Cooke succeeded in attaching his final construction to a typewriter and demonstrating its completely successful operation in March, 1902, as claimed, and testified to by him, he was, at least, sufficiently convinced of his success to commence proceedings to obtain a patent. He opened correspondence with the Keystone Law & Patent Company, of Philadelphia, in March, 1902, and on the 24th sent the company a check for $5 as a fee for making a preliminary examination. On April 2, 1902, another check for $10 was sent to cover the cost of the necessary drawings. The application for

a patent was sent to Cooke and was sworn to by him on May 12, 1902, and returned to the company whose business was that of a solicitor of patents. Objections have been made to the introduction of the several letters of the patent solicitor, on the ground that their execution had not been sufficiently proved, and that it was not shown that the correspondence and checks related to this particular invention. Neither objection is tenable. The conditions are not similar to those where letters and documents are the evidence of a contract or claim which constitutes the subject-matter of litigation, and therefore require certain proof, direct or circumstantial. They were introduced merely as collateral evidence relating to the conduct of the party; and the fact that they were received in due course of mail, and acted upon both by the writer and the addressee from the commencement of the correspondence to the filing of the application, was sufficient proof of genuineness. Although the correspondence does not undertake to set out the particular invention and might possibly, therefore, have related to some other improvement in typewriters, we think there is no reasonable doubt of identity. It is established by the testimony of Gentis and the drawing made by him of the device of the issue, as well as by all the surrounding circumstances.

There was a failure to explain the reason why the application, attested on May 12, 1902, and returned to the patent solicitor, was not filed before June 11. But considering all the evidence relating to the occupation and means of the applicant, and his diligence in the employment and payment of his solicitor, with whom he had not the opportunity of meeting, and the very short time which was suffered to elapse, we concur with the Commissioner that it shows sufficient diligence to entitle him to the benefit of his earlier conception.

The decision will therefore be affirmed, and the clerk will certify the proceedings in this court to the Commissioner of Patents, as required by law. It is so ordered.     *Affirmed.*